# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES JOHNSON, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12CV00412-PPS |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Charles Johnson, Jr. seeks review of the Social Security Administration's decision to deny his application for Disability Insurance Benefits and Supplemental Security Income. Johnson claims he has been disabled since December 31, 2007 due to numbness on his right side and a pinched nerve in his back. Following a hearing before an ALJ, his application for benefits was denied. The ALJ concluded that Johnson was not disabled because he could perform a significant number of jobs in the national economy. This decision is supported by substantial – or at least substantial enough – evidence. Therefore, the agency decision is **AFFIRMED**.

## BACKGROUND

The relevant facts in this case are sufficiently presented in the agency record and ALJ decision, so only a brief summary of the highlights is warranted here. Johnson was born on February 26, 1961. (R. at 23.) He has limited education ending somewhere between the 6th and 9th grades, including some special education classes. (*Id.* at 62, 354, 377.) He has a learning disorder and presents with borderline intellectual functioning. (*Id.* at 72.) Johnson worked as a general laborer and machine operator from 1997 to 2007. (*Id.* at 43, 254.) He earned varying amounts during that time, and in the last two full years of employment (2005 and 2006), he earned about $36,000 per year. (*Id.* at 182.) Over the course of his working career, Johnson switched

jobs for various reasons. For example, he says that in one instance, he got stuck in a machine when his back locked up and he had to quit (*Id.* at 43); in another, he was terminated when his then-employer switched to computers which he was not qualified to work on (*Id.* at 44); and in yet a different job, he was unable to work after being arrested and incarcerated at the Miami Correctional Facility in Bunker Hill, Indiana. (*Id.* at 200, 349-50.)

Johnson originally applied for DIB and SSI in June 2009, claiming that he suffered from a disability caused by numbness on his right side and a pinched nerve in his back. (*Id.* at 69, 200.) These applications were denied, (*id.* at 69), and Johnson filed a timely request for a hearing. (*Id.*) He appeared *pro se* at the hearing before the ALJ (though he is represented by counsel in these proceedings). (*Id.* at 35.)

The ALJ undertook the standard five-step disability analysis mandated by 20 C.F.R. §§404.1520, 416.920. She first found that Johnson has not engaged in substantial gainful activity since the alleged onset date, December 31, 2007. (R. at 71.) The ALJ's analysis then moved to Step Two, where she found Johnson had the following severe impairments: lumbar degenerative disc disease; hepatitis C; hypertension; anxiety disorder; major depressive disorder; borderline intellectual functioning; learning disorder; and history of substance abuse. (*Id.* at 72.) The ALJ found at Step Three that Johnson did not have one of the listed impairments or a combination of impairments that would automatically make him disabled for DBI and SSI purposes. (*Id.* at 72.) At Step Four, she determined that his residual functional capacity ("RFC") precluded him from performing any past relevant work. (*Id.* at 82.) However, at Step Five, the ALJ concluded that even taking into account the reduced RFC and Johnson's age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Johnson] can perform." (*Id.* at 82.) As such, the ALJ found him not to be disabled. (*Id.*) The SSA upheld the

2

decision at the final agency review stage on September 13, 2012. (*Id.* at 1-6.) Johnson initiated judicial review proceedings on November 16, 2012. (DE 1.)

Johnson faults the ALJ's decision for three principal reasons. First, he contends that the ALJ improperly ignored that his advanced age puts him in a qualifying category for disability. Second, he says that the ALJ discounted the medical examinations by the Disability Determinations Bureau. Finally, Johnson argues that the ALJ erred when she failed to factor his mental health and intellectual functioning limitations into his credibility assessment in a positive way, rather than in a negative way. For the reasons discussed below, none of these objections warrants remand or reversal.

## DISCUSSION

I must defer to any factual determinations made by the ALJ and affirm her decision if substantial evidence supports it. *See* 42 U.S.C. § 405(g); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether the claimant is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal brackets omitted).

"To determine if substantial evidence exists, the court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (internal quotations omitted). An ALJ is not required to discuss every single piece of evidence or testimony presented; instead, he or she "must provide a 'logical bridge' between the evidence and [his or her] conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir.

2008). Credibility determinations are especially entitled to deference because the ALJ has a crucial opportunity to observe the claimant's testimony (and I don't). *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Finally, rather than nitpick the ALJ's opinion for inconsistencies or contradictions, I must give it a commonsensical reading during judicial review and reverse credibility determinations only if they are patently wrong. *Id.*

## Johnson's Age-Related Arguments

Now on to Johnson's specific arguments. He offers two age-related objections to the ALJ's decision. First, he says that his advanced age puts him in a qualifying category for disability. (DE 13 at 6-7.) Second, Johnson argues that the wrong age was considered by the vocational expert during his consideration of the hypothetical questions asked by the ALJ. *Id.* Neither of these is persuasive.

With respect to his advanced age, it is true that Johnson was only 46 at the alleged onset date of December 31, 2007, which is considered a "Younger person." *See* 20 C.F.R. § 404.1563. But by the time of the June 9, 2011 hearing, Johnson had turned fifty, which puts him in the category of a "person closely approaching advanced age." *Id.* So there's little dispute that he should have been evaluated as someone in the latter category.

And that's what the ALJ did. To be sure, there is an inconsistency in the ALJ's opinion. She first erroneously stated that Johnson was a 46 year-old person. But yet the ALJ went on to say that Johnson "is defined as an individual closely approaching advanced age," (R. at 86), meaning that she plainly knew that he was over the age of fifty. So what is to be made of this inconsistency? Nothing, I believe, since the ALJ clearly applied the correct – and more lenient – standard for Johnson's age at the time of the hearing. More particularly, she used the correct corresponding rule, Medical-Vocational Rule 202.10, 20 C.F.R. § 404 app. 2 ("Closely

4

approaching advanced age"), as a framework for her analysis. (R. at 86.) So any error – and it seems best described as a scrivener's error – in the ALJ's interpretation of what constitutes an individual "approaching advanced age" and whether Johnson fell in that classification is harmless at best; at the end of the day, she put Johnson in the right category and applied the right standard. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (holding that an ALJ's harmless error is insufficient basis for remand); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (same).

Johnson's second principal age-related contention is that the age the ALJ instructed the vocational expert to consider during her analysis at the hearing was erroneous. The best thing to say about this assertion is that it isn't supported by the record. During the hearing, which was attended throughout by the vocational expert, Johnson testified that he was fifty years old. (R. at 41.) When the ALJ then asked the vocational expert the standard job-related hypothetical questions, she prefaced them with the following admonition: "I'd like for you to assume an individual the claimant's age...." (R. at 57.) It seems pretty clear to me that this meant for the vocational expert to assume that the hypothetical individual was fifty years old. I understand that Johnson disagrees with that, and he thinks that the vocational expert used the age of 46 as a basis for the hypothetical. Yet he doesn't point me to any indication in the record that this was the case. Therefore, he has not met his burden on this issue. *See, e.g., Allord v. Astrue*, 631 F.3d 411, 416 (7th Cir. 2011).

**Opinion of an Independent Physician**

Johnson's next argument is that the ALJ improperly discounted the opinion of a Disability Determination Bureau doctor (Dr. Kenneth Bundza, Ph.D.), even though the physician was an independent (and presumably neutral and unbiased) examining source. (DE 13 at 6-7.) It's true, of course, that an ALJ should evaluate every medical opinion in the record, regardless of where it

5

comes from. *See* 20 C.F.R. § 404.1527(c); *see also McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (holding that an ALJ must address every medical opinion offered by the state). But that doesn't mean every opinion is treated equally. Instead, there's a distinct hierarchy in the universe of medical sources issuing disability opinions.

The various sources of medical opinions are classified into three types: (1) treating sources, which are medical sources with a history of an ongoing treatment relationship with the claimant; (2) nontreating sources, which have examined the claimant but do not have an ongoing treatment relationship; and (3) nonexamining sources, which have not examined the claimant but provide medical or other opinions. *See* 20 C.F.R. § 404.1502; *see also Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009) (distinguishing between treating and nontreating sources). For obvious reasons, treating sources are given the most deference, and therefore their opinions are generally accorded controlling weight. *See* 20 C.F.R. § 1527(c)(2); *see also Simila*, 573 F.3d at 514. As noted below, there's no suggestion that Dr. Bundza – or anyone else in this case – was a treating source.

Nontreating and nonexamining sources come next. An ALJ determines how to weigh their opinions by considering the following factors: (1) whether the source actually examined the applicant; (2) how long and often the source provided treatment, as well as the nature and extent of the treatment; (3) the amount of evidence the source provides to support his or her opinion; (4) the consistency of the source's opinion with the other evidence in the record; (5) whether the source is opining in a field in which he or she is specialized; and (6) any factors brought to the attention of the ALJ, by the claimant or others, or of which the ALJ is aware, that tend to support or contradict the opinion. *Id*. at 1527(c); *see also Simila*, 573 F.3d at 514 (explaining nontreating analysis generally).

6

No single source will (necessarily) be dispositive. "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(I). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions…" 20 C.F.R. § 404.1527(e)(2)(ii).

Johnson argues that Dr. Bundza's opinion should be given "just as much weight as the remainder of Mr. Johnson's medical evidence and testimony." (DE 13 at 6-7.) The ALJ's job is not to treat all medical evidence the same, however, but to assess the medical evidence and determine how much weight different opinions and findings should be given. And based on her opinion, the ALJ seems to have done just that.

During her Step 4 analysis, the ALJ specifically evaluated whether the claimant had a mental impairment that met the criteria of Listing 12.05 (Mental Retardation). (*Id.* at 74.) During that analysis, the ALJ expressly discounted Dr. Bundza's opinion and gave more weight to a contradictory opinion from Dr. Maura Clark, Ph.D., which the ALJ explained was more consistent with the record. (*Id.* at 79.) The ALJ further indicated that she was minimizing Dr. Bundza's opinion vis-a-vis the other opinions proffered during Johnson's incarceration and its aftermath at Park Center because those "records of treatment and evaluation fail to suggest that significant cognitive deficits (as demonstrated during Dr. Bundza's testing) were suspected." (*Id.* at 74.) The ALJ concluded by noting that – even assuming Dr. Bundza's IQ testing results were valid – the mental impairment criteria of Listing 12.05 were still not met, because no records supported the onset of the impairment before age 22. (*Id.*)

The ALJ's opinion demonstrates that she appropriately assessed the weight to be given Dr. Bundza's findings, considering the appropriate factors under §1527(c), and that she then gave an

7

adequate explanation of the reasons for discounting Dr. Bundza's conclusions. I certainly can't say she was patently wrong. Johnson's argument presents no basis for reversing the ALJ's decision.

That's not Johnson's only objection to how the ALJ treated the state doctors' opinions. He also argues in a similar vein that the ALJ improperly rejected findings by the State agency when she discounted the opinion that he was limited to standing/walking for two hours per day (with other postural maneuvers limited to occasional performance) and that he had trouble following basic instructions. (DE 13 at 7.)

These arguments are misguided as well, though for a different reason. First, the opinion that Johnson was limited to standing/walking for two hours per day was not rejected by the ALJ, but rather *incorporated* into the RFC and the hypothetical that the ALJ asked the vocational expert. (R. at 60, 75.) Johnson similarly misstates or misunderstands the findings of Dr. Clark. (DE 7 at 13.) In fact, Dr. Clark *didn't* find that Johnson couldn't follow basic instructions; instead, she simply concluded that "[t]his claimant has a work history which argues against intelligence limiting [his] ability to perform simple tasks." (R. at 377.) In other words, she found that his work history suggested that he *could* undertake simple or repetitive tasks, which at least implies an ability to take instruction.

The bottom line in this case is that substantial evidence in the record supports the conclusion that the ALJ gave thoughtful, careful analysis to all medical sources in the record and weighed those sources appropriately. It's not my job to reweigh the evidence. *See Kasarsky v. Barnhart*, 335 F.3d at 543 (holding that a court sitting on judicial review should not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment"); *Clifford v. Apfel*, 227 at 869 (7th Cir. 2000).

**The Implication of Johnson's Inconsistent Testimony at Hearing**

Johnson's final argument is that the ALJ misinterpreted the inconsistencies in his administrative hearing testimony. Instead of being germane to his credibility, Johnson says, the inconsistencies underscore his cognitive deficiency and actually *supported* his claim that he is suffering from significant mental disability. (DE 13 at 7.)

Perhaps that's one way to look at it. But it's not the only way. And I can only reverse a credibility determination – which this essentially was – if it is patently wrong. *See Jones*, 623 F.3d at 1160. In this case, the ALJ concluded that the multiple and significant inconsistencies in Johnson's testimony and in the record rendered that testimony less than credible. (R. at 77-78.) I can't say that she was patently wrong to do so; indeed, I'd probably be inclined to reach the same conclusion if I were in her seat.

At the end of the day, one of the most important things an ALJ can do – at least as far as my review is concerned – is enunciate specific reasons for his or her credibility finding. *See Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007) (citing SSR 96–7p). "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations…." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). This is for a good reason – I can only determine whether an ALJ did his or her job if I can understand the ALJ's basic thought process. "The finding must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. Where the credibility determination is based upon objective factors rather than subjective considerations, we have greater freedom to review the ALJ's decision." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (internal citations omitted).

9

The ALJ in this case certainly gave me enough details to understand why she came out the way she did on the question of Johnson's credibility. She specifically observed that "[m]uch of the testimony conflicted with the objective evidence, and as such, it cannot be accorded full persuasive weight. Furthermore, general credibility is undermined." (R. at 77.) Indeed, Johnson concedes that numerous inconsistencies occurred, though he puts a different spin on them. (DE 13 at 6-7.) The inconsistencies specifically noted by the ALJ provide a plausible – and therefore sufficient – basis for the ALJ to conclude that Johnson's testimony wasn't credible.

## CONCLUSION

After a careful review of the parties' briefs and the administrative record, I have concluded that substantial evidence in the record supports the ALJ's finding that Johnson is not disabled.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Charles Johnson, Jr.'s applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act is AFFIRMED.

The Clerk shall enter judgment accordingly.

**SO ORDERED**.

ENTERED: December 5, 2013.

s/ Philip P. Simon<br>
PHILIP P. SIMON, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT